A. H. BJORGO AND ANOTHER v. FIRST NATIONAL BANK OF EMMONS AND ANOTHER.[1]

February 4, 1916.

Nos. 19,602——(230).

**Second appeal — law of the case.**

1. When the evidence on a second trial of an action is not materially different from the evidence on the first trial, the decision of this court on an appeal reviewing the former trial is, whether right or wrong, the law of the case, and conclusive on a second appeal.

[1] Reported in 156 N. W. 277.

**Same — evidence.**

> 2. The evidence in this case considered and *held* not to be materially different from that presented on the trial reviewed on the former appeal.

**Rulings of court.**

> 3. Certain rulings of the trial court on the admission of evidence *held* erroneous.

After the former appeal reported in 127 Minn. 105, 149 N. W. 3, L.R.A. 1915B, 287, the case was tried before Quinn, J., who when plaintiffs rested granted defendant's motion to dismiss the action. From an order denying their motion for a new trial, plaintiffs appealed. Reversed.

*T. A. Kingland, A. U. Mayland* and *J. O. Peterson,* for appellants.

*John F. D. Meighen* and *Bennett O. Knudson,* for respondent bank.

BUNN, J.

On a former trial of this case the court below ordered a dismissal, but afterwards concluded it was wrong and granted a new trial. This order was affirmed by this court in Bjorgo v. First National Bank of Emmons, 127 Minn. 105, 149 N. W. 3 (also reported in L.R.A. 1915B, 287, with note). At the close of plaintiffs' case on the new trial the court again granted defendant's motion to dismiss. Plaintiffs appeal from an order denying their motion for a new trial.

If the evidence at the close of plaintiffs' case on this trial was in all material aspects the same as the evidence on the former trial, our decision on the former appeal, whether right or wrong, was the law of the case, the question is *res adjudicata,* and the trial court erred in dismissing the action. 1 Dunnell, Minn. Dig. § 398, and cases cited. Orr v. Sutton, 127 Minn. 37, 148 N. W. 1066; Marshall v. Chicago, R. I. & P. Ry. Co. 131 Minn. 392, 155 N. W. 208.

Defendant claims that there was important additional evidence on the new trial. We are unable to find any additional facts that make the case essentially different from the case made on the former trial, so that it can reasonably be said that the issues were for the jury on the first trial, but not on the second. On both trials the evidence tended to show the following facts:

The Southwest Land & Orchard Company was incorporated under the laws of Arizona, February 21, 1911. B. B. Haugan was its chief pro-

moter. He had come to Emmons some two months before he presented the draft to the defendant bank, to deliver a lecture. The cashier of the bank had met Haugan, knew he was promoting and selling stock in the Orchard Company, and had bought some stock from him. Outside of knowing that Haugan was a lecturer on various subjects, religious and humorous, and that he was attempting to sell stock in an Arizona corporation that claimed to own or have an option on an extensive tract of land in Texas, the cashier had no acquaintance with his character or financial standing. March 2, 1911, Haugan presented to the cashier the draft in question and requested payment. As stated in the former opinion this draft was for $600, drawn by the Kensett Bank, of Kensett, Iowa, upon the Commercial National Bank of Chicago, and was payable to the order of the First National Bank of Emmons, Minnesota, the defendant in this action. The cashier made no inquiries, but paid the amount of the draft to Haugan, who afterwards disappeared. Plaintiffs resided at Kensett, Iowa. On February 25, at Kensett, they agreed with Haugan to subscribe for ten shares of the Orchard Company stock. They procured from the Kensett bank the draft in question and handed it to Haugan. They had pleaded in the complaint, and offered to prove, that the draft was delivered to Haugan with the instructions that it should be deposited by Haugan in the defendant bank, to pay for the shares subscribed for when the Orchard Company should acquire the title to the Texas land. The trial court excluded all evidence as to these instructions and of the agreement in this regard between plaintiffs and Haugan.

The evidence which defendant relies on to support its claim that the facts presented on this appeal make a vitally different case from those on the former appeal does not seem to us to bear out the contention made. It is pointed out that the cashier testified on this trial that it was a common custom of his to cash drafts payable as this one was. He did mention one instance in which he had done this before, but it was for a man whose standing was well known to him, and the transaction fell far short of establishing any custom. Besides the cashier was an adverse witness, and his testimony was not conclusive on plaintiffs. Another new item of evidence is the testimony of the cashier that Haugan told him, as the reason why the draft was made payable to the bank, that plain-

tiffs did not want their banker to know that Haugan got their money. Another item is the testimony of the cashier that he had cashed checks and drafts for Haugan before. As to these alleged differences in the testimony on the two trials, it is sufficient to say that the jury was not bound to accept the cashier's testimony as true on either point, even conceding the importance of either item. The only new testimony of any importance, as it seems to us, is that of the vice president of the Kensett bank, to the effect that that bank had no knowledge of the claimed instructions by plaintiffs to Haugan. The argument here is, of course, that an inquiry to the Kensett bank would have disclosed no information other than as to who were the purchasers of the draft. We think this fact insufficient to justify a holding contrary to the decision on the former appeal. No inquiry was in fact made, and it is not for us to say that an inquiry of the Kensett bank, or of plaintiffs, might not have disclosed to the defendant that Haugan had no right to payment of the draft.

The briefs are largely directed to the question of the soundness of the former opinion. As we view the case, that question is not open for discussion. We therefore do not review the authorities cited by counsel, or indicate whether that decision would or would not be followed in another case. In the present case, as pointed out in the decisions before cited, we cannot overrule the former decision. The result is that the trial court was wrong when it declined to follow that decision, and there must be a new trial.

There were also erroneous rulings on the admission of evidence. In our opinion the court should have admitted the evidence of plaintiffs as to their agreement with and instructions to Haugan. Of course it would not bind defendant on the question whether it was negligent in paying the draft to Haugan, but the rejected evidence tended to show the situation an inquiry by defendant bank might have disclosed, and also to show plaintiffs' interest in the draft, both material issues in the case. This also applies to a ruling sustaining an objection to testimony tending to show that the Orchard Company never acquired title to the Texas land.

It was error to exclude the evidence offered tending to show the custom of banks in regard to cashing without inquiry at the request of the

one presenting them drafts that are payable to the order of the bank itself. It occurs to us now, as it did when the case was here before, that evidence of this kind would be of great value in reaching a decision of the doubtful question.

The point that plaintiffs should stand this loss, rather than defendant, because of their negligence in intrusting Haugan with the draft, formed the basis of the dissent of Mr. Justice Holt on the former appeal. It was decided adversely to defendant's contention by the majority of the court, and the decision is the law of the case.

We have not said and do not say that defendant is liable in this case. We have said, and again say, that the evidence should be allowed to come in, and the case be passed upon by a jury.

Order reversed and new trial granted.